IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:25-cr-00146 |
| ) | |
| KIA A. PLAYER, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S AMENDED[1] SENTENCING POSITION AND REQUEST FOR DOWNWARD VARIANCE

COMES NOW, Kia A. Player ("Player"), by counsel, and hereby states that she has received and reviewed the Presentence Report ("PSR") prepared in this case. The PSR reflects that Player has a total offense level of 14 and a Criminal History Category I, yielding an advisory guideline range of 15 to 21 months. She has no objections to the PSR. Player respectfully requests that the Court vary from the suggested guideline and impose a sentence of 12 months and 1 day. Such a sentence would be in accordance with the Title 18 U.S.C. § 3553(a) factors that follow. The requested sentence is appropriate, as it is sufficient but not greater than necessary to reflect the objectives of Title 18 U.S.C. § 3553(a).

### Argument

***The Sentencing Factors Under Section 3553(a) Support the Imposition of a Sentence of 12 Months and 1 Day***

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to

---

[1] The contents of this Amended Sentencing Position and Request for Downward Variance remain the same as the original Sentencing Position and Request for Downward Variance with the exception that two exhibits have been added. **Exhibit A** contains additional Letters of Support, and **Exhibit B** contains pictures of the shelter. Both exhibits were received after the filing of the original Sentencing Position and Request for Downward Variance.

1

reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and the need to provide restitution to any victims of the offense.

Courts may impose a variance outside of the guideline range after consideration of all relevant departure provisions. Gall v. United States, 552 U.S. 38, 49 (2007). Variances preserve a district court's ultimate ability to impose a sentence that it views is "sufficient, but not greater than necessary." See 18 U.S.C. § 3553(a).

### *The Nature and Circumstances of the Offense*

Player pled guilty to Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1343 for her role in a fraud scheme from August 2022 to April 2023. In August 2022, Player and uncharged individual bid on a Richmond contract for the operation of inclement weather homeless shelters. Player and her partner were later awarded the contract and quickly formed the non-profit "RVA Sister's Keeper" ("RVASK") to operate two shelters. Both the City of Richmond and the federal Department of Housing and Urban Development reimbursed RVASK for the program's various expenses. While operating the shelter, providing both shelter and food to Richmond's unhoused, Player submitted falsified and inflated invoices to the City of Richmond, commingling funds between RVASK and her for profit business. During the scheme, RVA Sister's Keeper received $995,44 of which $199,163 was due to improper billing by Player. The remainder of the funds were properly paid to RVA Sister's Keeper for the various operational costs, including expenditures for food, bedding, improvements to a rented space and the like. Many of the clients were successfully transitioned to rapid rehousing or otherwise connected with services and providers within the continuum of care.

2

### *The History and Characteristics of Kia Player*

Player is a 41 year-old woman who was born and raised in Richmond. When she was 8 years old, her parents divorced. After the divorce, Player lived with her mother and only saw her father sporadically, due largely to two separate and extended periods of incarceration. Though he wrote, her father was unable to provide the kind of emotional or financial support needed. Despite this, Player had a reasonably comfortable childhood. Player attended six semesters of college before withdrawing. Player lived with her mother until she was 24 years old.

Player's father was released from his last period of incarceration when Player was 27. He suffered from mental health issues, physical health issues, and substance use problems. Player helped take care of her father after his release and welcomed him into her home. She helped buy his groceries, maintain their shared home, scheduled doctors appointments, and made sure he took his medication. Unfortunately, he passed away in 2024.

Player has primarily worked in the behavioral health field. From 2015 to 2019, she did contract work for varying mental health entities. From 2019 to 2024, she was the program director for Riverside Counseling and Consulting. Since 2024, Player has been the executive director of MH Resources Solutions, LLC, a mental health services provider. Each of these experiences has demonstrated her commitment to the community and to underserved populations. It is notable that the conduct at issue in this case is essentially limited to the period during which she operated a cold weather shelter, November 2022 through April 2023, demonstrating how aberrant her acknowledged conduct was as compared with both her personal and professional lives. According to a June 8, 2023 report from the City of Richmond, RVASK filled 5,071 beds, averaged 33 individuals per day and connected more than twice as many clients to housing opportunities than the other two providers combined. DX-1 at 6. Player even assisted unhoused clients, after the inclement weather season and the contract obligations were concluded. DX-2.

Player is currently married and still resides in Richmond where she continues to enjoy the support and admiration of many. While she has no biological children, Player helped raise two stepsons who are now adults. Player keeps in contact with both stepsons and remains close to her mother and sister. Player enjoys the support of many in the community as demonstrated by those in attendance for her plea and the letters of support that will be offered to the Court.

### *The Need for the Sentence Imposed*

Under 18 U.S.C. § 3553(a)(2), a sentencing court must consider the need for the sentence imposed to: (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (B) afford adequate deterrence to criminal conduct; (C) protect the public from future crimes by this defendant; and (D) provide the defendant with educational or vocational training, medical care, or other corrective treatment.

There is a "broad judicial consensus" that "Section 2B1.1's loss table overstates culpability in a great many cases."[2] In fact, the Sentencing Commission has proposed and currently considering amendments to Section 2B1.1.[3] Part of the Sentencing Commission's rationale, is that the guidelines have not been revised to account for inflation since 2015.[4] Under the current proposed amendment, Player's loss amount would result in an 8 point increase to her offense level while under the current guidelines it is a 10 point increase.[5] These 2 points effect the guidelines by 5 months, such that the high end of her guidelines would be 16 months.

A sentence at below the guidelines would still provide adequate deterrence. The simple fact of receiving a felony conviction will provide deterrence independent of the amount of incarceration she receives. Even the Department of Justice has acknowledged that it is the *certainty* of being

---

[2] Barry Boss & Kara Kapp, *How the Economic Loss Guideline Lost its Way, and How to Save It*, 18 Ohio ST. J. of Crim. L. 605, 618 (2021).
[3] *Proposed Amendments to the Sentencing Guidelines*, U.S. Sentencing Comm'n, at 57-59 (2025).
[4] *Id.* at 43.
[5] *See id.* at 59.

4

punished that is more impactful than the length of incarceration at deterring future crimes.[6] Longer sentences do not deter others from committing crimes, as "criminals know little about the sanctions for specific crimes."[7] General deterrence "does not require a particularly burdensome penalty, merely one that people would seek to avoid."[8] Similarly, longer sentences do not deter repeat offenses and may actually make an individual more likely to reoffend as incarcerated individuals become desensitized to the threat of future incarceration.[9]

The requested sentence will not endanger the public. First, the offense was non-violent. Second, the recidivism rate for all first-time fraud offenders is just 9.3%, the lowest of any offense category.[10] Third, studies have shown that periods of incarceration beyond a year have minimal effects on recidivism. A 2016 study determined that while there was an increasing effect of time served on recidivism for sentences of one year or less, there was a decreasing effect of time served for sentences of 13-24 months and no effect for sentences between 25-60 months.[11] Fourth, and perhaps most importantly, Player deeply regrets her actions and is committed to being a law-abiding citizen. She will be unable to secure future government contracts, essentially eliminating the opportunity for recidivism.

Player would welcome the opportunity for educational programs while incarcerated. Ms. Player is currently enrolled as a full time student at New York University, where she is taking 16 credit hours and pursuing a Bachelor's Degree in Leadership and Management. Classes are offered in a hybrid learning model; Ms. Player attends lectures remotely. She has previously completed

---

[6] *Five Things About Deterrence*, National Institute of Justice (May 2016), https://www.ojp.gov/pdffiles1/nij/247350.pdf.
[7] *Id.*
[8] Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1205 (2014) (footnotes omitted).
[9] *Five Things About Deterrence*, at 1-2.
[10] *United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, 30 (May 2004).
[11] Daniel P. Mears *et al.*, *Recidivism and Time Served in Prison*, 106 J. Crim. L. & Criminology 83, 119 (2016).

several semesters of college, which she has transferred to her current program, and has an anticipated graduation date of Fall 2027. Ms. Player would welcome the opportunity to continue educational programs while incarcerated. Conversely, Player is not in need of mental health or substance use treatment. Player rarely drinks and does not use drugs.

### *The Kinds of Sentences Available*

Congress directed the Sentencing Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or otherwise serious offense," and the "general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury." 28 U.S.C. § 14 994(j). Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and non-serious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note).

### *Unwarranted Sentencing Disparities*

Under 18 U.S.C. § 3553(a)(6), a sentencing court must consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. "During the past five years, there have been 469 defendant's whose primary guideline was §2B1.1, with a Final Offense Level of 14 and a Criminal History Category of I[.]"[12] The average sentence was 10 months of incarceration, and the median sentence was 12

---

[12] *Judiciary Sentencing INformation (JSIN)*, United States Sentencing Commission (last accessed Jan. 28, 2026), https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

months.[13]  Thus, a sentence of 12 months and a day would be in line with the median sentence.

### *Need for Restitution*

The Court must also consider the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a)(7).  Player understands the need to provide restitution to the victims of the offense.  Since her actions came to light, Player has been committed to satisfying her impending restitution requirement and will be providing a certified check for a substantial amount of her restitution at her sentencing hearing.  Her diligent efforts on this point are an indication of her acceptance of responsibility, contrition, and desire to make amends.

### Conclusion

For the reasons stated, Player respectfully requests that this Court impose a sentence of 12 months and 1 day.  Further, Player respectfully requests that she be permitted to self-report to the Bureau of Prisons.  This short window will permit her to continue her schooling and continue working to satisfying her restitution and forfeiture obligations before she is designated to a Bureau of Prisons facility.

Respectfully submitted,

**KIA A. PLAYER**

By: /s/ Charles E. James, Jr.
Charles E. James, Jr. (VSB No. 46310)
WILLIAMS MULLEN, P.C.
200 South 10th Street, Suite 1600
Richmond, VA  23219
Office: 804.420.6529
Fax:    804.420.6507
Email: cjames@williamsmullen.com
*Attorney for Kia A. Player*

---

[13] *Id.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on February 23, 2026, the foregoing Amended Sentencing Position and Request for Downward Variance was electronically filed with the Clerk of Court and served on all counsel of record using the Court's CM/ECF system.

/s/ Charles E. James, Jr.
Charles E. James, Jr. (VSB No. 46310)
WILLIAMS MULLEN, P.C.
200 South 10th Street, Suite 1600
Richmond, VA  23219
Office: 804.420.6529
Fax:    804.420.6507
Email: cjames@williamsmullen.com
*Attorney for Kia A. Player*